[Decided January 31, 1888.]

## C. C. THORNTON v. TERRITORY OF WASHINGTON.

1. CONSTITUTIONAL LAW—LOCAL OPTION ACT—ELECTION PRECINCTS—LEGISLATIVE POWER, DELEGATION OF.—The act of the legislative assembly of Washington Territory, approved January 25, 1886, and generally known as the local option act (Sess. Laws 1886, p. 31), attempts to delegate legislative power to each of the various election precincts of the territory, and is therefore unconstitutional and void.

2. SAME—MUNICIPAL CORPORATIONS—INTOXICATING LIQUORS, SALE OF.—The legislature of the territory has power to grant to municipal corporations the right to regulate, restrain, or license the sale of intoxicating liquors within their corporate limits, and such grant of power to municipal corporations is valid, and will be upheld by the courts. But an election precinct, under the laws of this territory, is not a municipal corporation within that sense, and is therefore incapable of receiving such grant of power or of exercising the same. Per JONES, C. J.

ERROR to the District Court holding terms at Snohomish. Third District.

The plaintiff in error was indicted for selling intoxicating liquors in Snohomish precinct, in Snohomish county, in violation of the local option act, said precinct, at an election held therein under the provisions of that law, having by a majority of its legal voters declared against licensing the sale of liquors in that precinct. An agreed statement of facts was filed by the parties, wherein the defendant admitted the facts charged in the indictment, whereupon the court adjudged him guilty. A motion in arrest of judgment was made, on the ground that the local option act was unconstitutional and invalid, which motion was overruled, and judgment for fine rendered against the defendant, from which judgment the defendant appealed.

*Messrs. Metcalfe & Rochester,* and *Messrs. Lewis & Gilman,* for the Plaintiff in Error.

Election precincts are created by the power vested in the county commissioners, and are neither a legal political subdivision of the territory, defined by law, nor a public corporation, nor a *quasi* corporation. (Sec. 3067, Code.) They are not created by the statute. Their boundaries are not defined by law, and consequently not even a *quasi* corporation; for a *quasi* corporation must be created by the legislature, and subject, always, to legislative control. The sovereign authority only is competent to create a corporation. (*McCulloch* v. *State of Maryland,* 4 Wheat. 316, 424; *Atkinson* v. *Marietta etc. R. R. Co.,* 15 Ohio St. 21; *McPherson* v. *Foster,* 43 Iowa, 48, 22 Am. Rep. 215.) Election precincts are not *involuntary quasi corporations,* because not created by competent authority. The electors resident in the election precincts in Washington Territory have no attribute of individuality as a mass. They are no distinctive part of the governmental machinery. Even so important a legal subdivision of a state as a county is but a *quasi* corporation, and is invested with limited corporate powers. (1 Dillon's Municipal Corporations, secs. 22, 23; *Finch* v. *Board etc.,* 30 Ohio, 37; *People* v. *Ingersoll,* 58 N. Y. 1, 17 Am. Rep. 178; *Ray Co.* v. *Bentley,* 49 Mo. 236; *Goodnow* v. *Commissioners etc.,* 11 Minn. 31.) Counties, cities, and towns are municipal corporations, and are parts of the machinery for carrying on the affairs of state, and are usually invested with certain subordinate legislative powers to facilitate the due administration of their own internal affairs, and to promote the general welfare of the community, to exercise police powers. But even they have no *inherent* jurisdiction to make laws or to adopt governmental regulations. They cannot exercise any powers of this description, except such as are expressly or impliedly derived from their charters or by statute. (*Laramie Co.* v. *Albany Co. et al.,* 92 U. S. 308; *Johnson* v. *Louisville,* 11 Bush. 527; *Wallace* v. *San Jose,* 29 Cal. 181; *Leavenworth* v. *Norton,* 1 Kan. 432;

*Alley* v. *Inhabitants etc.*, 53 Me., 446; *Booth* v. *Town of Wood-bury*, 32 Conn. 118.) The legislature has no right to del-egate to the people living within certain territorial limits who have no distinctive political character or govermental organization. (*Ex parte Wall*, 48 Cal. 321.) The operation of the act depends on the vote of the qualified voters of an election precinct; and an election precinct is not a legally defined body or part of the territory, inasmuch as the fixing of the boundaries of the election precinct is delegated by the Code to the county commissioners; while the fixing of the boundaries of municipal or *quasi* corporations is a func-tion of legislative authority which the legislature has no con-stitutional power to delegate. (*The People* v. *Parks et al.*, 8 Pac. Coast Law Jour. 219, 231, 233, 237; *Prince George's Co.* v. *Bladensburg*, 9 Rep. 406.) Police powers can only be conferred or delegated by the legislature on municipal or public corporations, or *quasi* corporations, having prescribed and defined boundaries, either theretofore known and recog-nized by, or then created by, the sovereign law-giving power. Even the extent of the police power exercised by the local governments of municipal corporations depends upon the limitations of their charters. (Teideman's Lim. Police Pow., sec. 212, p. 638; 1 Dillon's Municipal Corporations, sec. 89, p. 115.)

*Mr. J. T. Ronald, Prosecuting Attorney*, for the Defendant in Error.

The relation of election precincts to a county is like that of a ward to a city. (*Davenport* v. *Dodge Co.*, 105 U. S. 241; *Nemaha Co.* v. *Frank*, 120 U. S. 46; *Blair* v. *Cuming Co.*, 111 U. S. 363.) The only question submitted by the local option act to the vote of the electors in the precincts is, whether or not the county commissioners shall exercise the power of granting licenses in the particular precinct. (*Bank of Chenango* v. *Brown*, 26 N. Y. 467; *Bank of Rome* v. *Vil-lage of Rome*, 18 N. Y. 38, 44.) The question is one relating to a local regulation which it is competent for the legislature to submit to the people of the particular district to be af-

fected. (*Clark* v. *City of Rochester*, 28 N. Y. 605.) The question of license has been reserved for the action of the board of commissioners, who are the officers of the county— an organized body. The legislature has the power to make the action of the board of commissioners, in regard to any election district, dependent upon the voters of that district. The fact that a license is to be issued by county officers, instead of by the precinct officers, does not change the power of the legislature of submitting the question of license to the voters of the election precinct affected thereby. This principle has been recognized in numerous cases in regard to the issuing of railroad bonds by towns in the state of New York. The court holds that the legislature has power to bind the minority in any locality, saying: "For if it may bind one citizen, without his consent, it may bind all; the rights and immunities of all being no more beyond the legislative power than those of each individual. It therefore rests in the legislative discretion to impose any conditions it may think the public welfare requires to the exercise of such a power." (*Town of Duanesburgh* v. *Jenkins*, 57 N. Y. 190; *Ralls Co. Court* v. *U. S.*, 105 U. S. 737.) In this territory election precincts are a distinct subdivision of the county, authorized by statute. Justices of the peace and constables are elected by the voters of such precincts. The local option law submits the question of license or not to the voters of the different precincts in the county, and provides that incorporated towns or cities shall be considered a precinct for the purposes of the act.

Mr. Justice LANGFORD delivered the opinion of the court.

The question before the court is, whether the "local option law" (so called) is void under the provisions of the organic act and the constitution of the United States.

The statute in force at the time the said "local option law" was passed, in terms, prohibited all retail sale of spirituous liquors. The local option act provides that a vote in each precinct may do the same. In this there is no proposed change. The former act provides a penalty for selling; so does the latter.

Each act provides a mode by which the penalty may be avoided, which operates under each act as an exemption from the prohibitory clause and the penalty. The former act exempts from the prohibition those who prove moral character, give bond, and, by paying a penalty, procure a license.

The "local option act" does not exempt this class, but exempts from the prohibition druggists alone.

There is also in the local option act a provision to the effect that even druggists shall not sell liquor for a beverage; but this is more formal than real, as liquor is so sold by druggists, or others, for the profits of the sale, with no control of the use after the sale is made, whether it be made for medicine or beverage. The purpose of the drunkard, until he has drank, and even then, is not susceptible of proof. If a man says he drinks for medicine, there is no way to disprove it.

Thus we see that the essential difference between the so-called license law and the local option act is, that the former permits sale by all who conform to certain provisions, and the latter permits only druggists to sell. The local option act narrows the class of persons whom the former act permits to sell, and thus far purports to repeal the former statute. The former statute will prevail except by petition and vote. The law is repealed in the district voting, and this by the operation of the vote.

It is well, when considering an act like this, to recur to the definition of law. Law is (1) a rule of action, (2) prescribed by the supreme power of the state, (3) commanding what is right and prohibiting what is wrong.

First: It is a rule of action. A rule of action does not relate to one act alone, but to all of a class of actions. An order to perform any particular action is a mandate or decree, but not a law. This rule of action is general and applies to all of a class. This rule must be prescribed, or it is not a law; this, as to statute law, means that as written it must be approved by the legislature. The law must command; a mere request or permission is not a law. If the

local option act conforms to all these three requisites, it is a law; if it fails to conform to one or more, it is not a law.

First, then, let us examine the act, to perceive what, if anything, it commands to be done. It grants the power to petition and to vote, but it commands neither; and hence it, in this respect, is not a law. Strike this grant of power, which we have seen is not a law nor any part of a law, out, and there is nothing left in the act which can have any effect. The act merely grants power to certain persons by a petition and vote to repeal a statute of the territory. If the power is thus granted to repeal the statute in each precinct wherein the people elect, then the repeal takes effect solely by those citizens electing to create a rule and a penalty. The rule and the penalty are the only parts of the statute which purport to be mandatory or law, and these have all the effect they do have, not by virtue of legislative act, but by virtue of petition and vote.

The statute is repealed in each precinct voting "yes"; in others it is not repealed; which clearly shows that the vote repeals the law. Is this repeal prescribed? if so, where will this prescription be found? Is this repeal in any precinct written anywhere? if so, where? Whether the statute is repealed in any precinct can only be determined by parol evidence. The courts take judicial knowledge of laws, but to find the rule of action and the penalty in any precinct, the court can resort neither to judicial knowledge nor any statute, but must try the question of whether the law exists as a fact, by evidence.

It will be seen that the local option act lacks one of the essential elements; it is not prescribed by the supreme power of the state; in fact, it is not prescribed at all. If it exists, it exists by virtue of the petition and vote alone, and is to be found by proving the petition, the order of the board of commissioners, the posting of election notices, and the majority vote. It has been said that the law rules the vote; and not the vote, the law. This misapprehension arises from misnaming the grant to vote a law, though it is not mandatory.

It has been said that the law is in force from the date of its passage, but takes effect only upon the happening of the contingency of a petition and election resulting in a certain way.   If this be the contingency, then a law can be made to go into effect at the option of those subject thereto.   If a law goes into effect only at the option of those subject thereto, then it is not mandatory.

Can that be law which is not mandatory, and from the terms of which it cannot be discovered whether the rule of action exists, or whether there exists a penalty for the violation of this rule?

If a man should go to any precinct in the territory, and ask whether a man, according to the law of the land, might, by making proof and payment, set up a business of selling spirits, or whether druggists alone might make such sales, he would be shown the local option statute.

This giving no information, he would inquire whether there had been any election; learning that there had, he would inquire whether or not it was legal; and as this question involves the investigation of each step which must be a condition precedent to its legality, he would have to investigate both the facts as to what had been done and the conditions of the grant of power establishing the rule. These uncertainties, as to whether a man would be subject to fine or imprisonment, are not the qualities of law, but rather the qualities of anarchy.

Every state constitution, and our organic act, grant the power to make laws to the legislature alone, and that this power cannot be delegated is conceded by every decision of every court.   This being conceded, it has also been conceded that towns and cities may be granted the power to make laws for the inhabitants thereof.   These two well settled principles appear to be in conflict, but in reality are not so.

The laws of the city or town are by-laws and not state laws; the laws of the state are not by-laws, but state laws.

If a man performs an act which violates an ordinance or by-law, and the same act is a violation of state law, he can

be punished twice for the same act; once as a violator of the laws of one government, and again as a violator of the laws of the other government. In this respect the laws of the city or town are as distinct from the laws of the state as are the laws of the several states from the laws of the United States. Police powers are not delegated to cities or towns, but are or may be granted.

The grant is an act of the legislature, but not a law thereof.

The granting act, whether in one or many, is merely a power granted to and forming a government, containing, it may be, many conditions precedent to the right to exercise the power, but the charters are never rules of action prescribed for the government of the citizens of the state, as such.

When the power to make by-laws is granted, the power is as to some subject matter, and history has not shown a single instance wherein the power to make by-laws on such subjects is also a power to repeal any ordinance as well as make it. In fact, the power to make by-laws, when given, creates a local legislature, as free to act within the scope of the power granted as is the state legislature to act upon the subject matter which the state constitution grants to it.

These by-laws must not only be passed by the local legislative body, but are of no force until they are duly authenticated and recorded. They, like other laws, must be prescribed before they have any effect, and be thus made certain in a form in which they can be read by subjects who are compelled to obey them.

Towns and cities are governments within the government; adding something to, but not taking anything from, the state government; not acting as the delegate of the state, but acting "by virtue of a power granted by the state." Towns and cities can in no manner enact, or repeal, or affect state laws. These city or town legislators meet, discuss, amend, enact, and repeal ordinances and the by-laws. Acts made are prescribed in the town or city record, so that all subject thereto may know the exact terms which they are

bound to obey. The act of a precinct is not the act of a local legislature, in that the power granted to the precinct is not the power to pass by-laws upon a particular subject matter, and repeal or modify such by-laws. There is no provision made as to how the by-law, when passed, shall be authenticated or prescribed. In fact, the act does not purport to grant the right to make a by-law, but attempts to give power to cause a state law to exist. It is an attempt to delegate the power to make a state law exist, without its being prescribed at all, or without its being accepted or passed as a by-law by the local legislature.

From the above contrast between the granted power to a local legislature to make and amend by-laws, and this statute, it will be seen that the former is a *quasi* government over the subject matter granted, while the latter is not, but is a pretended power to cause one state law to live, which was, previous to the local action, dead. The local option statute attempts to delegate power to the voters of a precinct to make a state law; the power granted to towns or cities is merely to make by-laws. The local option act is clearly, therefore, opposed to the rule that the power to make state laws cannot be delegated; the creation of local city or town governments, with power to make by-laws, not being a law, but a grant, is not subject to the same objection.

So, while we think all the decisions which hold that police power may be granted to towns and cities to pass by-laws to prohibit or regulate the sale of spirits are entirely inapplicable to the statute we are now considering, the validity of a power to make by-laws upon prohibition in no way proves or tends to prove that an election to make a state law exist is valid. Indeed, the word "election," until quite lately, when applied to political subjects, never denoted the choice of a principle, or a rule of action, but merely a choice of persons. To make the word "election" mean the choice of a state law, is to invent for a word a new meaning, which it never previously had.

There are very few decisions which militate against the above very obvious distinction. That a city or town may

accept or reject a statutory proposal of a grant and exer-
cise of local power, is not an exception, for, as we have
seen, the power lies in the grant; and it is not supposed
that any set of persons are bound to accept or use a grant
which they refuse to accept, although everyone must obey
a state law, whether he consents or does not consent.

The only exception is where the inhabitants of a county
have been permitted to vote whether there shall be fence
laws within its borders.   It is impossible to say what the
nature of those counties was, whether they had the power
to make by-laws or not.   If they had not the power to make
by-laws, then the decisions were in favor of a delegation of
power to make state laws, which is not only opposed to the
vast weight of authority, but also to fundamental principles
of our government.   There are a number of other decisions
which are cited as being in favor of the delegation of the
power to make state laws.   There are decisions which up-
hold statutes which provide that the vote of the people in a
certain locality may locate a county line, county buildings,
county roads, or the like.   By an examination of all the
statutes thus held valid, it will be found that none of them
attempt to authorize a vote to establish a rule of action.   To
exactly locate anything is not a rule of action, inasmuch as
it is no rule at all, but is a specific act; it is an act as to
one particular thing, and concerning which an act of the
legislature could not of itself be effective.   The most that
a specific act of the legislature could do, would be to adopt
a previous  survey or landmarks and  courses.   To locate
anything, administrative officers are almost always required,
and the act to be performed is not to make rules of action,
not to impose penalties, but to do a particular act—to
choose places of location.

As the board of county commissioners may locate and
establish roads, or as the commissioners of public build-
ings may construct and locate buildings, so commissioners
may be authorized to construct a code of laws, but not to
pass them; none of these commissioners can enact a law.

It is established  that a legislature may grant administra-

tive powers to whomsoever it pleases; and the act of locating a county line, a county road, or a county building, is essentially an administrative act. That the legislature may make all the people of any locality administrative officers, to perform such acts, must be admitted by all. Statutes of this class empower whom they choose to perform these administrative acts. The same acts generally prescribe conditions precedent to the exercise of the power; and they also contain rules of action to govern these administrative officers. The part of the act which conveys the power is in the nature of a grant; that part which prescribes rules of action is the only part of the act which is a law. Judges are but one kind of administrative officers; an act creates their power as courts. This grant of administrative power is not a delegation of power; for, in the most part, the legislature itself cannot of itself do what it empowers administrative officers to do. As, for instance, it grants judicial power, but itself cannot exercise it. Administrative officers are often empowered to exercise discretion, as an assessor, a board of commissioners, or the like, but never can any of these prescribe rules of action.

Courts may prescribe rules of practice, but this is a law-making power which clung to courts from their former power to make laws as well as to adjudicate them, before the strict line of division was made between legislative functions and judicial functions. Then, the act of locating county seats and county boundaries, being administrative in its nature, may be granted to one man or all the men in any locality; and such grant is not a delegation of power, much less of legislative power. For these reasons, all decisions applicable to such statutes are irrelevant to the case at bar and can shed no light for the decision of this case.

Eliminate all the decisions in the two classes of cases above mentioned, as to grants of power of government to towns and cities and grants to administrative officers, and there are hardly any which have been cited in favor of sustaining this law which can be considered; for all, or nearly all, apply to one or the other of these two classes.

We see, therefore, that the fixed principle that legislative power cannot be delegated has no well-considered decision opposed to it, and very few decisions ill-considered opposed to it, while it is supported by a host of well-considered opinions.

The science of government, so far as it is a machine for the protection of the natural rights of the individual, is of comparatively late discovery.    All the ancient governments, and most modern ones, have been constructed upon the theory that sovereignty cannot be divided, but that executive, judicial, administrative, and legislative functions are all united in one body.    The division of these functions, so that different bodies were each confined to the exercise of one, and no other body could interfere with it, is an invention to protect private right.    No man's rights can be abated or impaired, except three different bodies, each acting separately within its functions, have agreed to it.

Ancient democracies were like a mob or vigilance committee; they prescribed few laws, but, upon the impulse of the moment, deprived any citizen of his country, his property, or his life.    The ancient German tribes who conquered England thus acted.    As civilization advanced and the tribes were united into a kingdom, gradually it became a rule that no man should suffer in life, limb, or body, except for a violation of prescribed law.    Indeed, the separation of power into different co-ordinate departments and an independent judiciary were not well established; and for this reason bills of attainder for past acts and other oppression of the individual, still prevailed.    Even in New England, the towns simulated the ancient absolute democratic form of the ancient German tribes.    As people became enlightened they sought to limit the powers of government by establishing constitutions, which limited, defined, and separated the powers of government; and this was done to protect the individual citizen in his person and property.

By this system the legislative department was separated from each of the other departments, and its functions restricted to making laws; and it was prohibited from admin-

istering or enforcing them. This effectually protected the citizens from any laws which had not been previously written and enacted, except common law, which was prescribed by the decisions of the courts.

The judicial department was limited to deciding individual cases according to the law already prescribed. The legislative action was restrained, first, by express prohibition; second, by being forced in each house to have three readings of bills; third, by the separate agreement to the exact words of the statute by the three distinct branches of the legislature; fourth, by a court which should decide whether the act was within the constitutional power of the legislature.

The tendency of bodies of men is to tyrannize over the weaker or the minority. These checks were made to prevent this tendency. Learning ancient acts of government gives little light as to this system; it is the best that has been invented for human happiness.

That laws shall exist which are not plainly in exact words prescribed, so that an individual may know them, which are not passed by the deliberation of each of the three legislative departments, each member in each branch sworn to exercise his best judgment for the people upon his own responsibility, is directly opposed to every principle of the American or any good government.

The local option act attempts to violate these principles. The legislator, in this act, has sought to escape the responsibility of his trust by delegating power to an absolute democracy, who neither deliberate in three different bodies nor have any mode of prescribing their action or their laws. If the legislature can delegate its powers, so may the executive and judiciary; and each having resigned its trust, the government is revolutionized into an absolute democracy, unchecked in its impulses. We shall have abandoned all the salutary checks which alone protect private right, and each man holds his life, liberty, and property at the mercy of the uncontrolled and hasty impulse of local majorities. To prevent such calamities the judiciary was created and

made independent, and sworn to protect each individual's rights in so far as he has not, by violating prescribed law, forfeited them.

Let the decision below be reversed.

ALLYN, J., concurred.

TURNER, J., dissented.

Mr. Chief Justice JONES delivered the following concurring opinion:

The act in question purports by its title to be one " to prohibit the sale of intoxicating liquors in the several precincts of Washington Territory, whenever a majority of the legal voters of any such precincts, at an election held for that purpose, vote in favor of such prohibition."

The mere title imports an anomaly, and requires the exercise of strong presumption to sustain anything that may follow it. But as every reasonable intendment should be exercised in favor of the validity of an act of the legislature, we should not, unless compelled by the dictates of sound reason, declare them invalid.

Passing by mere quibbles and fine distinctions, it must be conceded that the legislature has power, unless deprived of it by the supreme law of the land, to grant the power to municipal corporations to regulate their own internal local affairs as shall conduce to their own welfare and security, and it is no longer an open question in the United States that the several states and territories may make such grants relating to the licensing, or not licensing, the sale of intoxicating liquors, and all experience has proven that such " local option" laws are a wise, and perhaps the very best, system yet adopted to regulate and restrain the traffic in intoxicating beverages.

In this act, however, there is no municipal corporation designated capable of receiving such grant or exercising the power mentioned in the act.

A precinct, under our system, has no existence in that sense, and in the only instances where the grant might other-

wise have been sustained, the act in question very carefully disqualified those municipal corporations from exercising the power or granting it to them.

I have no doubt whatever that such a grant may be given to a city, or incorporated town, or village, or to a county, but instead of making such grant, the act studiously follows its title by declaring in section 8 that "each incorporated city and town in this territory, for the purposes of this act, shall be deemed to be but one election precinct; but if any outlying territory, adjacent to a city or town, is not included in any other precinct . . . . the electors residing in such outlying and adjacent territory shall be deemed electors of such city or town," and may vote on the question, and constitute part of such city or town "for the purposes of this act," thus imparting into every city or town so situated an element not governed by the by-laws and ordinances of the city or town, to make by-laws and ordinances, or assist in making them, for the city or town, and establishing a rule for the inhabitants of the municipal corporation, of which they are not members.

As already said, the ground on which these grants are upheld is that of a local government being empowered to make its own regulations on this matter within their own limits, and it seems to me a more flagrant violation of that theory could not well be imagined.

It is in keeping with this idea that the board of county commissioners of the county, for the convenience of the electors "mentioned in this section," may establish polling places in the city or town, and also in the "outlying and adjacent territory" forming part of the "precinct" thus created, and the same board shall, at the same time, call the election in this "precinct," as provided in preceding sections for other precincts, and "appoint the judges of election for such polling places."

It is completely in harmony with this and the preceding sections that section 9 should require the "county auditor of the county," on the tenth day after any "election under this act . . . . to notify two county officers, one

of whom shall be the judge of probate, to be present at the office of the auditor," and proceed with the auditor, at a time to be designated by him, "to canvass the votes" cast at such election; and, after taking an oath, they shall "proceed to canvass and tabulate such election returns" in a manner stated, and to "such tabulated statement they shall affix their certificates" to its truth.

It is then provided in the same section that the auditor of the county shall record this statement and the certificates in a book, and from that time it is "notice to all the world" of its contents.

Section 10 then prohibits the city or town authorities in this "precinct" from granting licenses for the sale of liquors, if the election under this act "shall result in favor of prohibition;" and according to the provisions of section 11, all licenses before that time granted, and then in force, are "terminated and at an end."

Section 14 prohibits the courts from inquiring into any irregularities regarding the election, or any of the proceedings leading up to it, in any prosecution instituted "under this act *or any other act,* but the tabulated statement of the canvassers provided for in section 9 of this act *shall be conclusive of the facts therein stated and of all the proceedings antecedent thereto.*" After this, in section 16 of the act, it is declared, "This act shall control, in so far as it conflicts with any general or local law already enacted, *or hereafter to be enacted,* and to the extent of its provisions so conflicting, such general or local law" (already enacted, or hereafter to be enacted) "shall be deemed a modification of the same, unless in such law the legislature expressly declare a contrary intent."

It would seem to be unnecessary to say, after this recital of the provisions of the act itself, that it is in no sense a grant of power to local municipal corporations to regulate or prohibit the matter of sale or license of sale of intoxicating liquors.

It is not a delegation of police power; it annihilates, for the purposes of the act, the only corporate bodies men-

32

tioned in it, and leaves the court, however disposed to sustain a wise and well-considered local option law, no room on which to base an opinion in its favor.

The judgment in this action must be reversed, with costs.