The State of Minnesota *vs*. Charles L. Cooke.

October 26, 1877.

**Act Authorizing Legal Voters of a City to Determine Whether Licenses for Sale of Intoxicating Liquors Shall Issue.**—An act which authorizes the legal voters of a city to determine whether licenses for the sale of liquors shall be granted, and providing that if the voters shall determine that no licenses shall be granted, "any person thereafter who shall sell, bargain or dispose of any spirituous, malt, vinous, fermented, or intoxicating liquors, within the corporate limits of said city, shall be deemed guilty of a misdemeanor," and, upon conviction, shall be punished as therein provided, is valid.

**Same—Revocation of Unexpired Licenses.**—Under such an act, if the voters determine against granting licenses, it operates as a revocation of all outstanding unexpired licenses.

The defendant was arrested and tried before a justice of the peace for the offence of selling intoxicating liquors within the corporate limits of the city of Rochester, on May 10, 1877, contrary to the provisions of section 3, *c.* 34, Sp. Laws 1876. It appeared, upon the trial, that on April 3, 1877, an election was held in the city of Rochester, pursuant to the said chapter, and it was then determined, in the manner therein provided, that no licenses should be granted for the sale of intoxicating liquors in said city, either by the common council or the board of county commissioners. To justify the sale, the defendant gave in evidence a license from the common council of the city of Rochester, issued December 1, 1876, authorizing him to sell intoxicating liquors within said city for the term of twelve months from its date; the ordinance of the city under and pursuant to which the license was issued; and other proof to the effect that he paid to the treasurer of said city, for the aforesaid license, the sum of $200; that no part of said sum had ever been paid or tendered back to him; that the said license had never been revoked by any of the authorities of said city; that he had never received any notice of the result of the said election; and that the sale in

question was at the place and in accordance with the terms of the license.

The defendant thereupon moved to be discharged, which motion was overruled, and the court then adjudged that he pay a fine and the costs, and in the meantime stand committed. From this judgment the defendant appealed, on questions of law alone, to the district court of Olmsted county, *Mitchell,* J., presiding, and the said judgment having been affirmed by the said court, the defendant appealed to this court.

*Chas. C. Willson* and *C. M. Start,* for appellant.

The general scope and object of the statute was the regulation of the subject of new licenses, and section 3 ought not be extended in its application so as to embrace old licenses. *Attorney General* v. *Detroit,* 2 Mich. 139; *Estate of Ticknor,* 13 Mich. 44; *Bank* v. *Hale,* 59 N. Y. 53; *Bryant* v. *Livermore,* 20 Minn. 313; *Grimes* v. *Bryne,* 2 Minn. 92, (106.) It is not to be presumed that the legislature intended to revoke existing licenses, without notice and without compensation to the holders, and the court should not give the statute such effect by construction.

Moreover, the law itself is unconstitutional, as an attempt to delegate the law-making power to the people of the city of Rochester, not as a municipal body, but as individual electors. The vitality of the law depends upon the vote of the people, and not upon the judgment of the legislature. *Ex parte Wall,* 48 Cal. 279; *State* v. *Weis,* 33 Iowa, 134; *Geebrick* v. *State,* 5 Iowa, 495; *Barto* v. *Himrod,* 8 N. Y. 483; *Maize* v. *State,* 4 Ind. 342; *Meshmeier* v. *State,* 11 Ind. 484; *Rice* v. *Foster,* 4 W. & S. 58.

*R. H. Gove,* City Attorney, and *H. C. Butler,* County Attorney, and *George P. Wilson,* Attorney General, for respondent.

The statute was a complete and mandatory law at the date of its approval, not dependent upon the vote of the people of Rochester, and therefore constitutional. It prohibited the sale of intoxicating liquor, under certain penalties,

upon the happening of a certain event, and that event has happened. There is here no delegation of the law-making power to the people of the city of Rochester, but merely a direct submission to them of the question, which was formerly indirectly submitted to them through their common council, whether licenses shall or shall not be issued. There is in this no delegation of a new power, but merely permission to exercise an old power in a new way. This matter of issuing licenses is a mere police regulation, and therefore a proper subject for submission to the people of the locality, since it is only allowing less extensive powers than a municipal charter could confer. Cooley Con. Lim. 123; *Com.* v. *Bennett,* 108 Mass. 27; *Locke's Appeal,* 72 Pa. St. 491; S. C. 13 Amer. Rep. 716.

Licenses are mere temporary permits to do what otherwise would be unlawful; they are not property in any legal sense, (*Metropolitan Board of Excise* v. *Barrie,* 34 N. Y. 657,) and holders thereof are bound by subsequent legislation. Bish. on St. Crimes, § 1001.

Finally, every intendment ought to be made in support of legislative enactments, and they are not to be declared invalid except for the plainest and most conclusive reasons. *Fell* v. *State,* 42 Md. 71; S. C. Amer. Rep. 83.

GILFILLAN, C. J. The charter of the city of Rochester, as amended in 1867, provided (Sp. Laws 1867, p. 135, § 1) that the common council might "grant licenses for vending or dealing in spirituous, vinous, or fermented liquors," and might "restrain and prohibit any person from vending, giving, or dealing in spirituous, vinous, fermented, mixed, or intoxicating liquors of any kind, and impose such restrictions or prohibitions by fine or imprisonment." To the police power thus vested in the council no valid objection can be made. Under it the council might determine that no person should be permitted to deal in liquors, and impose and enforce penalties for doing so. We can see no reason to doubt that it was competent for the legislature to have given the prohibitory power to the

council, and in the charter itself have prescribed the penalty for disregarding such prohibition—prescribing in such case for the contingency of a prohibition by the council; and a disobedience of such prohibition would not subject that part of the charter to the objection that it became law only upon the action of the council. In such case it would be the law, upon the passage of the act, that if the council should prohibit the traffic in liquors any one violating such prohibition should be liable to the penalty.

The charter was, in 1876, amended (Sp. Laws 1876, c. 34, § 1) by an act, the first section of which reads: "The legal voters of the city of Rochester are hereby authorized to vote upon and determine for themselves the question whether license for the sale of intoxicating liquors shall be granted in said city or not." The second section provides for the vote of the electors upon the question, and that, if a majority of the voters shall be against license, no license for the sale of liquors in the city shall ·be granted. The third section provides that if it be determined, as therein provided, that no license shall be granted, then "any person thereafter who shall sell, bargain, or dispose of any spirituous, malt, vinous, fermented or intoxicating liquors, within the corporate limits of said city, shall be deemed guilty of a misdemeanor," and shall, upon conviction, be punished as prescribed in the section.

The effect of the act is to make the vote of a majority of the voters against license a prohibition, from and after the time it is taken, against the sale of liquors. The power to make such prohibition is taken from the council and vested in the electors. When the legislature confers any power upon a municipal corporation, it may prescribe by whom the power shall be exercised, by a particular officer or set of officers, or by the electors at large; and the removal of the power in question from the council to the legal voters was unquestionably valid.

The imposition by the amendatory act of the penalty for

disregarding a prohibition by the vote of the electors, stands upon the same footing as would the imposition by the original charter of a penalty for violating a similar prohibition by the council. The part of section 3 of the act of 1876, which we have quoted, clearly makes it unlawful for *any person,* without any exception of those having unexpired licenses, to sell, bargain or dispose of liquors after the voters shall determine that no license shall be granted. This provides for an effectual revocation of outstanding licenses by the vote of the electors. Although penal statutes should be construed strictly, they cannot be construed contrary to the language used; and to construe this act so as to exclude from its operation those having licenses unexpired, when the language used is that "any person thereafter [that is after the vote] who shall sell," etc., "shall be guilty of a misdemeanor," would be contrary to the plain import of the language.

Judgment affirmed.