# Wytheville.

## PRUNER AND CLARK V. THE COMMONWEALTH.

### June 24th, 1886.

1. APPELLATE COURT—*Certificate of evidence.*—Where, though the bill of exceptions claims to set forth the facts proved upon the trial, it is apparent that the evidence is certified, and not the facts, this court must look only to the evidence of the exceptee. *Scott's Case,* 77 Va. 344.

2. CRIMINAL PROCEEDINGS—*Lewd and lascivious cohabitation—Incontinence.*—To constitute this offence, it is essential that it be proved that the parties cohabit together—that is, live together in the same house as man and wife. Proof of occasional acts of incontinence merely is not sufficient. *Jones* v. *The Commonwealth,* 80 Va. 18.

Error to judgment of circuit court of Russell county, rendered June 13th, 1884, refusing to grant a writ of error and *supersedeas* to judgment of the county court of said county, rendered 11th day of April, 1884, whereby the plaintiffs in error, George A. Pruner and Ellen Clark, were each sentenced to pay a fine of fifty dollars and costs, they having been found guilty by the jury on an indictment for lewd and lascivious cohabitation.

Opinion states the case.

*S. S. Dinwiddie,* for plaintiffs in error.

*Attorney-General R. S. Ayers,* for the Commonwealth.

LEWIS, P., delivered the opinion of the court.

The statute provides that "if any persons, not married to each other, lewdly and lasciviously associate and cohabit together, or whether married or not, be guilty of open and gross lewdness and lasciviousness, they shall be fined not less than fifty nor more than five hundred dollars," etc. Acts 1877–78, p. 302, sec. 7.

Under this statute, the plaintiffs in error were indicted and convicted in the county court of Russell county for lewd and lascivious cohabitation; and the question is, whether the conviction is warranted by the evidence in the case. We are of opinion that it is not.

The record states that the defendants excepted to the action of the court in overruling their motion for a new trial, and "tendered a bill of exceptions, setting forth the facts proved upon the trial, which bill was received, signed, and sealed by the court," etc. But it is apparent from an inspection of the bill of exceptions, as the attorney-general contends, that *the evidence* is certified, and not the facts; since the testimony of each witness who was examined on either side is set out in detail, and the evidence is conflicting; that is, all the witnesses who testified for the defence were called for the purpose of impeaching the two main witnesses for the Commonwealth, and their testimony, all of which was parol, is confined to that point. So that, applying the rule which prevails in the appellate court in relation to a certificate of evidence, we must look to the evidence of the Commonwealth only. *Read's Case,* 22 Gratt. 924; *Dean's Case,* 32 Id. 912; *Scott's Case,* 77 Va. 344.

But whether the certificate be regarded as one of facts, or of the evidence, the result is the same. For rejecting the evidence of the defendants, and giving full force and credit to that of the Commonwealth, the decision of the lower court still appears to be wrong.

The principal witness for the Commonwealth, Preston Bailey, testified that within one year before the finding of the indictment he saw the defendant, Pruner, at the house of the defendant, Ellen Clark, about a dozen times; that on several occasions he saw the former going towards the house of the latter late in the evening, and coming from that direction early in the morning; that on one occasion, as he was passing through the woods near Ellen Clark's house, he saw the defendants lying down together, and that upon his approach, the defendant, Pruner, rolled to one side, and witness passed on; that once the defendants left his (witness's) house together, and started towards the house of Ellen Clark, which was in the woods near Lebanon; and that she was a woman of bad character.

The witness, Elizabeth Bailey, wife of Preston Bailey, testified that on one occasion, as she was passing by Ellen Clark's house, she saw the defendants lying on the bed with their clothes on; and that Ellen Clark was a woman of bad character.

Another witness, Edward Boswell, testified that he once saw Pruner at Ellen Clark's at night; that he went there after dark; that witness left him there at 12 o'clock at night, but did not know how long he remained; that he never saw him there but once, and then saw nothing wrong; that once the house of Ellen Clark was stoned; that the defendant, Pruner, offered witness and one Marshall Cochran five dollars to watch and catch the parties; that they did so, and Pruner paid the five dollars; that he once saw the defendants together, sitting under a tree in the woods, and that he watched them, but saw no wrong. He also testified that Pruner lived in Lebanon, and was a house-keeper with several children. To the same effect is the testimony of the witness, Cochran.

Another witness, Fletcher Williams, testified that he once saw Pruner at Ellen Clark's house at night; that he was sitting in the corner talking; that he several times saw him coming from the direction of her house early in the morning, but did not know where he had been.

‹ The witness, William Correll (colored), testified that he had frequently seen Pruner coming from the direction of Ellen Clark's house.   He also testified, however, that Pruner traveled that way in going to Mr. Charles Roswick's house, and that it was the best and shortest route to that place; that Pruner had traveled that route several years before Ellen Clark moved to the house now occupied by her, and that in passing, he often told witness he was on his way to Mr. Roswick's, and sometimes said he was going to New Garden.

Upon this evidence the prosecution rested, and giving to it all the weight to which it is entitled, it is not sufficient to support the verdict.

In the first place, it shows that Pruner kept house and lived with his children in the town of Lebanon; and it does not show that such relations existed between him and the female defendant as to amount to a cohabitation within the meaning of the statute.   According to the ordinary signification of the term, to cohabit is to live together in the same house as man and wife.   Nevertheless, a man may be guilty of lewd and lascivious cohabitation with a woman at one place, though he does not otherwise abandon his own home at another; for a person may have more than one dwelling place, but occasional acts of incontinence merely are not sufficient to constitute the offence.   It is the more indecent, open, and demoralizing example of living in adultery or fornication as man and wife that the statute was designed to prevent.   And how long such illicit association must be continued to constitute the offence is a question dependent upon the intention of the parties, and,

therefore, to be determined upon the particular facts and circumstances of each case.   Hence it has been held that such association, though only for a short time, is sufficient to make out a case against the accused.

In the present case the evidence shows occasional interviews between the parties, and generally at the house of the female defendant.   The principal witness for the Commonwealth testified that he saw the male defendant there about a dozen times within a year—the other witnesses testifying that they saw him there less frequently.   It does not appear, however, that the parties dwelt together, or that they, at any time, even lodged together; nor does the evidence show directly a single act of intercourse, or any other act in itself unlawful.

It is true, the fact that Pruner was several times seen going in the direction of the house of the female defendant late in the evening, and returning from that direction early in the morning, when taken in connection with other circumstances in the case, justly excites suspicion that on those occasions, or some of them at least, he visited her house, and that his purpose in going there was unlawful.   But circumstances of mere suspicion can never be accepted as satisfactory evidence of guilt in a criminal case, in which the accused is entitled to an acquittal unless his or her guilt is established beyond a reasonable doubt.   And even if, from the circumstances of the present case, occasional acts of incontinence could be fairly inferred, that of itself, without proof of the requisite cohabitation to constitute the offence charged in the indictment would not be sufficient to support the verdict.   Adultery and fornication are statutory offences, for which a punishment is prescribed ; but this is not a prosecution for either of those offences.

It is laid down by a learned author that in a prosecution for lewd and lascivious cohabitation, something more must be shown against a defendant than mere private incontinence,

continued to however great a degree.    Bishop on Stat. Crimes, sec. 712.

In *Commonwealth* v. *Calef*, 10 Mass. 153, the prosecution was founded on a statute which provided that "if any man and woman, either or both of them being then married, shall lewdly and lasciviously associate and cohabit together, they shall be punished," etc.    In construing this statute, the court said: "By cohabiting must be understood a dwelling or living together, not a transient and single unlawful interview."

In *State* v. *Marvin*, 12 Iowa, 499, the indictment charged, in the language of the statute, that the defendants did lewdly and lasciviously associate and cohabit together.    The evidence showed that they lived together in the same house in the relation of master and servant, and that on two occasions the defendant Marvin was seen getting out of bed with the female defendant.    The jury returned a verdict of guilty, upon which judgment was entered for the State; but, on appeal, the judgment was reversed.    "The defendants," said the appellate court, "were not living together as husband and wife.    Secret acts of intercourse would not make them liable.    The burden of the offence is the open, lewd, lascivious conduct of the parties living together as man and wife.    It is the publicity and disgrace, the demoralizing and debasing influence, that the law is designed to prevent."

In *Searls* v. *The People*, 13 Ill. 597, which was a prosecution for living together in adultery, the trial court instructed the jury that "in order to constitute this offence, even one act of sexual intercourse need not be proved by positive testimony, but the offence is sufficiently proved by any circumstances which raise the presumption of unlawful intimacy and sexual and adulterous intercourse."    In reversing the judgment, the Supreme Court said: "In order to constitute this crime, the parties must dwell together openly and notoriously upon terms

as if the conjugal relation existed between them. In other words, they must cohabit together." See also 2 Whart. Crim. Law (9th ed.), sec. 1747, and cases cited.

To the same effect is the case of *Jones* v. *Commonwealth*, 80 Va. 18, which is decisive of the present case.

The judgment must therefore be reversed, and the case remanded for a new trial.

Judgment reversed.