## Richmond.

| 84 | 619 |
| 90 | 682 |

### SAVAGE v. COMMONWEALTH.

#### MARCH 15th, 1888.

1. INTOXICATING LIQUORS—*Local option—Constitution.*—Chapter 248, Acts 1885–86, p. 258, does not delegate a portion of the legislative power vested by the constitution in the general assembly, but merely leaves it to the popular vote to determine whether or not license shall be granted, and is not unconstitutional.
2. IDEM—*Quære.*—Whether a statute that prohibits the sale of intoxicating liquors—property in existence wherein the owner has vested rights at the time of its passage—is repugnant to the United States Constitution, is not decided in this case.
3. IDEM—*Case at Bar.*—Here, the evidence *held* insufficient to show that the liquor sold was intoxicating, or that it was sold *by the defendant* to the person named in the indictment as the purchaser thereof.

Error to judgment of judge of circuit court of Accomac county denying writ of error and *supersedeas* to judgment of county court of said county, rendered July 27th, 1887, upon an indictment under Acts 1885–86, ch. 248, p. 258, against Duffield Savage for unlawfully selling intoxicating liquors without license, and sentencing him to pay a fine of one hundred dollars, according to the verdict of the jury, and adding thirty days' imprisonment in the county jail. The defendant's demurrer to the indictment had been overruled. He moved the county court to set aside the verdict and grant him a new trial. This motion being also overruled the defendant excepted, and the court certified the evidence. The opinion states the case.

*Parramore & Browne* and *John S. Wise,* for the plaintiff in error.

*Attorney-General R. A. Ayers* and *Edmund Pendleton,* for the commonwealth.

LEWIS, P., delivered the opinion of the court.

It is contended that the county court erred—first in over-ruling the demurrer to the indictment, and afterwards in over-ruling the defendant's motion for a new trial on the ground that the verdict was contrary to the law and the evidence.

The indictment, which was found at the March term, 1887, charges that the defendant, "Duffield Savage, on the ——— day of ———, A. D. 188—, and since the 1st day of May, A. D. 1886, in the magisterial district of Lee, in Accomac county, did unlawfully sell intoxicating liquor to one William J. Barnes, against the peace and dignity of the commonwealth."

The grounds upon which it is contended that the indictment is defective are—*first,* that it does not charge that the offence was committed in a magisterial district which had voted against license; *second,* that it does not charge that the liquor sold was such as was the subject of license under the statute before the vote on the question of license or no license was taken; *third,* that it does not state a time certain at which the liquor was sold; *fourth,* that it does not charge that the liquor was sold either by retail or wholesale, or at an ordinary, or at any other particular place; and, *fifth,* because the statute, commonly known as the "local option law," under which the indictment was found, is unconstitutional.

The first three of these propositions are disposed of by what was said in the case of *Savage* v. *Commonwealth, ante,* p. 582; and as to the fourth, it is sufficient to say that the indictment follows the language of the statute, which makes it an offence to sell "intoxicating liquors," without reference

to the quantity sold, or the place where sold, provided the sale is made in a county, corporation, or magisterial district which has voted against license. The case of *Commonwealth* v. *Head,* 11 Gratt., 819, is not in point.

And the fifth objection is equally without merit. The statute provides for submitting the question of liquor license to the qualified voters of the several counties, corporations, and magisterial districts in the State, and, among other things, enacts that if any magisterial district vote "against license for the sale of intoxicating liquors therein, then no license shall be granted to any person in such district for the sale of such liquors; but if such district vote in favor of license, then it shall be lawful to sell with license obtained under existing laws," and penalties for a violation of the act are prescribed. Acts 1885–86, p. 258.

The case has been submitted without oral argument, and no reasons in support of the objection to the validity of the act are assigned in the petition for the writ of error. We suppose, however, it is based on the idea that the act delegates a portion of the legislative power which is vested by the constitution in the general assembly, and is therefore void. But this is a mistaken idea. The act is complete in itself, and merely prescribes conditions upon which the sale of intoxicating liquors may be licensed or prohibited altogether. In other words, it prescribes a police regulation, and leaves it to a popular vote to determine, not whether it shall be lawful or unlawful to sell intoxicating liquors, but whether license shall be granted or not. This, undoubtedly, it is as competent for the legislature to do as to leave it to the county and corporation courts to determine whether or not licenses shall be granted, or to confer upon a municipal corporation the power to regulate the sale of liquors within its own limits, or to adopt other like police regulations for its government. The case is not distinguishable in principle from *Bull* v. *Read,* 13 Gratt., 78. In that case the validity of an act of the legislature was assailed,

which provided for the establishment of a system of free schools in a particular magisterial district in Accomac county, subject to the approval of the voters of the district. It was contended that the legislature had no power to make the operation of a law dependent upon the result of a popular vote, and that the act was void. But the objection was overruled, and the act sustained, in an elaborate opinion of the court delivered by Judge Lee.

The question has often arisen in the courts of other States, and while the decisions on the subject are not entirely uniform, the great weight of authority is unquestionably in favor of the validity of such statutes.

This is the view taken by Judge Cooley, who, in his work on Constitutional Limitations, at page 123, *et seq.*, discusses the question with his usual clearness and ability. After remarking that municipal charters refer most questions of local government, including police regulations, to the local authorities, who are presumed to be better able to decide for themselves upon the needs and sentiments of their constituents than the legislature can be, he adds: "The same reasons would apply in favor of permitting the people of the locality to accept or reject for themselves a particular police regulation, since this is only allowing them less extensive powers of local government than a municipal charter would confer; and the fact that the rule of law on that subject might be different in different localities, according as the people accepted or rejected the regulation, would not seem to affect the principle, when the same result is brought about by the different regulations which municipal corporations establish for themselves in the exercise of an undisputed authority."

The question came before the supreme judicial court of Massachusetts in the case of *The Commonwealth* v. *Bennett*, 108 Mass., 27, in which the validity of a statute very similar to the one we are now considering, was sustained. The court said: "Many successive statutes of the commonwealth have made the

lawfulness of sales of intoxicating liquors to depend upon licenses from the selectmen of towns or commissioners of counties, and such statutes have been held to be constitutional. 7 Dane, Ab., 43; *Commonwealth* v. *Blakington*, 24 Pick., 352. It is equally within the power of the legislature to authorize a town by vote of the inhabitants to determine whether the sale of particular kinds of liquors within its limits shall be permitted or prohibited. This subject, although not embraced within the ordinary power to make by-laws and ordinances, falls within the class of police regulations, which may be intrusted by the legislature by express enactment to municipal authority," citing *Commonwealth* v. *Turner*, 1 Cush., 493; *State* v. *Noyes*, 10 Foster, 279; *Bancroft* v. *Dumas*, 21 Vt., 456; *Tanner* v. *Trustees of Albion*, 5 Hill, 121; *State* v. *Simonds*, 3 Mo., 414. See also *Commonwealth* v. *Dean*, 110 Mass., 357; *Commonwealth* v. *Fredericks*, 119 *Id.*, 199; *State* v. *Court of Common Pleas of Morris County*, 36 N. J., 72; *State* v. *Wilcox*, 42 Conn., 364; *Locke's Appeal*, 72 Pa. St., 491; *Groesch* v. *State*, 42 Ind., 547; *Fell* v. *State*, 42 Md., 71; *Slinger* v *Henneman*, 38 Wis., 504; *Erlinger* v. *Bonean*, 51 Ill., 94.

Nor are statutes prohibiting the sale of intoxicating liquors repugnant to the constitution of the United States, either on the ground that they impair the obligation of contracts, or deprive a person of his liberty or property without due process of law, or violate the privileges and immunities of citizens of the United States. Such statutes have been invariably held valid by the supreme court of the United States as police regulations, looking to the protection of the lives, health, and property of the citizens, and to the preservation of good order and the public morals, where they do not conflict with the paramount authority of Congress to regulate commerce with foreign nations and among the several States. *Bartemeyer* v. *Iowa*, 18 Wall., 129; *Beer Co.* v. *Massachusetts*, 97 U. S., 25; *Justice* v. *Commonwealth*, 81 Va., 209, and cases cited. Whether such a statute is valid, so far as it prohibits the sale of property

in existence, and in which the rights of the owner have become vested at the time of its passage, is a question not presented in the present case, and upon which we express no opinion.

The county court, therefore, did not err in overruling the demurrer to the indictment, but it did err in overruling the motion for a new trial, as a brief review of the evidence will show.

The first witness, William J. Barnes, testifies that "after the passage of the local option law" he called upon Winder and Drummond, who were the defendant's clerks at his hotel, in Lee magisterial district, in Accomac, for ginger, and got it; that he paid ten cents a drink for it, and drank it out of a glass about the size of an ordinary whiskey glass, in the room usually known as the bar-room; that he took much more of it at a drink than he was accustomed to take of whiskey; that he did not remember its color, but it did *not have the same taste as whiskey;* nor could he say *whether or not it was intoxicating,* because before drinking it he had drank whiskey, which was *given* him by the defendant and others. The defendant, he says, was not present when he purchased the ginger, and he does not know whether Winder and Drummond were authorized by the defendant to sell intoxicating liquors or not.

The next witness, Johnson, testifies that since the passage of the local option law he has drunk ginger at the defendant's hotel, and that he never saw any there before the law was passed. He thinks if a man were to drink enough of it, it would intoxicate him, and that a beer glass and a half of it would be sufficient. He ordinarily drank it out of a whiskey glass. He does not know, however, whether the ginger he drank was like that drunk by Barnes, nor does he say that it was *sold* him by the defendant or any other person; he merely says he *drank ginger* at the defendant's hotel. He does not even say he got it at the defendant's hotel, or that he got it

from the defendant or his agent, and *non constat* that he did.
He may have gotten it elsewhere.

The next witness, McCready, testifies that he *bought* ginger
at the defendant's hotel, and is satisfied it was intoxicating.
He does not know, however, whether that sold to Barnes was
intoxicating or not, nor does he say that what he got was sold
him by the defendant or his agent; and for aught he does say,
he may have bought it from a stranger, and without the de-
fendant's knowledge. And the testimony of the fourth and
last witness on the subject, John W. Wessells, is not more sat-
isfactory. He testifies that he was treated by a friend to a
drink of ginger at the defendant's hotel, and that the clerk at
the hotel waited on them. It looked and tasted, he says, like
whiskey, and might be considered whiskey, but he does not
say it was intoxicating. On the contrary, he says expressly
that the drink he took had *no effect upon him.* And, like the
witnesses who preceded him, he was unable to say what was
the nature or quality of the liquor sold to Barnes. He says
the liquor he got tasted like whiskey, but Barnes swears that
what he got tasted differently, and neither testifies that what
he drank was intoxicating.

This evidence, which is all the material evidence for the
commonwealth, is plainly insufficient to warrant the verdict.
It neither shows that the liquor sold to Barnes was intoxicating,
as the indictment charges, nor that Winder and Drummond,
or either of them, were authorized by the accused to sell it,
and the mere fact of their employment as clerks at his hotel is
not a fact from which their agency to sell liquor can be fairly
inferred. The legal presumption in favor of the innocence of
the accused can be rebutted only by proof sufficient to establish
his guilt of the offence charged in the indictment beyond a
rational doubt; or, in other words, the proof must be suffi-
ciently conclusive to exclude any reasonable supposition of his
innocence; and here the evidence for the commonwealth, giv-
ing it full force and credit, and rejecting that for the accused

(the evidence, not the facts, being certified), is not inconsistent with such an hypothesis. It may create a suspicion, but nothing more.

The position of the commonwealth is, that the accused must be presumed to have sold intoxicating liquors to Barnes, *because*, about the same time, and at the same place, he sold such liquors to other persons. But the latter proposition is not sustained by the evidence of a single witness, so that, to find the accused guilty, the fact of his guilt must be inferred from another fact not established in the case. This is contrary to the first principles of our criminal law. In *Johnson's case*, 29 Gratt., 796, Judge Moncure, in delivering the opinion of the court, said that "it is always insufficient where, assuming all to be proved which the evidence tends to prove, some other hypothesis may still be true; for it is the actual exclusion of every other hypothesis which invests mere circumstances with the force of truth"; and that, "where the evidence leaves it indifferent which of several hypotheses is true, or establishes only some finite probability in favor of one hypothesis, such evidence cannot amount to proof, however great the probability may be." See also *Pryor* v. *Commonwealth*, 27 Gratt., 1009; *Pruner* v. *Commonwealth*, 82 Va., 115; *Finchim* v. *Commonwealth*, 83 Va., 689.

Tried by this test, the motion to set aside the verdict in the present case ought to have been granted, and for this error the judgment must be reversed and the case remanded for a new trial.

JUDGMENT REVERSED.