## IN RE O'BRIEN.

(No. 2,031.)

(Submitted January 23, 1904. Decided February 9, 1904.)

*Local Option Liquor Law — Constitutional Law — Habeas Corpus.*

1.  The local option liquor law (Political Code, Sections 3180-3188) is not unconstitutional as being a delegation of legislative power to the people.
2.  The local option liquor law is not violative' of Constitution, Article V, Section 26, prohibiting local or special legislation.
3.  The local option liquor law is complete in its provisions, though it takes effect in each county only on a vote favorable to its provisions.
4.  Any invalidity of the local option liquor law on account of its failure to except from its provisions liquor for medicinal or sacramental purposes, or imported in original packages, cannot avail one who sold liquor otherwise than for those purposes or in that manner.
5.  The adoption of the local option liquor law in a county prohibits the sale of intoxicating liquors in the incorporated towns within said county.
6.  The right to manufacture and traffic in intoxicating liquors is one which is exercised subject to the regulation and control of the police power of the state.
7.  Every reasonable intendment is to be resolved in favor of the constitutionality of the law, and before the court can pronounce an enactment of the legislature invalid, such invalidity must be made manifest beyond a reasonable doubt.
8.  That when a writ of *habeas corpus* was served on a sheriff the complainant was not in fact confined in jail, but was permitted to go about without apparent restraint, is sufficient to justify a dismissal' of the petition for the writ.

APPLICATION by W. P. O'Brien for a writ of *habeas corpus.* Dismissed.

*Mr. Thomas C. Marshall,* and *Mr. Charles S. Wagner,* for Petitioner.

Counties are not municipal corporations, but at most *quasi* municipal corporations. (Constitution, Art. XVI, Sec. 1; Political Code, Secs. 4190, 4193; *People* v. *Sacramento,* 45 Cal. 692; *People* v. *McFadden,* 81 Cal. 491; *Kahn* v. *Sutro,* 114 Cal. 316; *Storm* v. *School,* 36 Am. St. Rep. 459, and note; *Lake* v. *Lacy,* 51 Am. Rep. 119, and note; 13 Century Digest,

page 1167, Sec. 1; *In re Wilshire,* 103 Fed. 622; Political Code, Sec. 4800, Sub-Secs. 1, 3 and 16.)

Ordinances passed under the police power granted municipalities have the force and effect of laws; the county cannot exercise any control whatever over them, nor can it in any way, by vote of its inhabitants or by its boards, suspend, alter, amend or contravene any such laws, sometimes called by-laws or ordinances, within the territorial limits of the town or city. *(Ex parte Roche* (Cal.), 37 Pac. 1044; *In re Mansfield,* 106 Cal. 400; *Los Angeles County* v. *Ikenberry,* 63 Pac. 766; *Ex parte Campbell,* 74 Cal. 20; *Woodward* v. *Sanitary District,* 99 Cal. 554; Cooley, Const. Lim. (6th Ed.) 256.)

The ordinance passed by the town of Hamilton is in entire accord with its charter provisions, and as the power given to the town is to license, tax and regulate saloons within the limits of the town, it means that a town is given the power in this respect to pass laws on the designated subject, at its discretion, and the local option law is either expressly, or by necessary implication, excluded. (Cooley, Const. Lim. (6th Ed.), 239; *McCarthy* v. *Deming,* 51 Conn. 422; *State* v. *Brannon,* 23 N. J. L. 284; *Tierney* v. *Dodge,* 9 Minn. 166; Tied. Lim. Sec. 212; Dillon, Mun. Corp. Secs. 363, 367-308; *State* v. *Welsh,* 36 Conn. 215; 15 Am. & Eng. Ency. Law (1st Ed.), 975, 1007 and note, 1046 and note, 974 and note. See also further on the status of counties as contra distinguished from incorporated municipalities, Cooley, Const. Lim. (6th Ed.), 294; *People* v. *Sacramento,* 45 Cal. 692; *Kahn* v. *Sutro,* 114 Cal. 316; *Stevens* v. *School,* 36 Am. St. Rep. 452, note; Tiedeman on Municipal Corporations, Sec. 146; Herr and Bemis, Municipal Police Ordinances, Sec. 3; 20 Am. & Eng. Ency. Law (2d Ed.), 1138; *Helena Consolidated Water Co.* v. *Steele,* 20 Mont. 1, 49 Pac. 382.)

The language of the grant to incorporate municipalities is that they shall have power to license, tax and regulate saloons within the limits of the city or town. The language of the local option law is that it shall be unlawful (after favorable vote)

to sell, etc., within the limits of the county. We contend that this case presents such a conflict as will warrant the court in applying the canon of construction provided for in Section 5162 of the Penal Code. The language is: "If the provisions of any title conflict with or contravene the provisions of another title, the provisions of each title must prevail as to all the matter and questions arising out of the subject-matter of such title." (*State ex rel. Berger* v. *Weston,* 74 Pac. 415; *Ham* v. *Santa Rosa Bank,* 62 Cal. 125, 136, 137; *Robinson* v. *Mayor of Franklin,* 34 Am. Dec. 364; *Thornton* v. *Territory,* 17 Pac. 896; *Ex parte Linn,* 19 Tex. Ct. App. 293; 17 Ency. of Law (2d Ed.), page 290, Sec. 22.)

In so far as the application of the local option law interferes with the municipal functions of the incorporated town of Hamilton, we maintain that it is class legislation. (Constitution, Art. V, Sec. 26; *State* v. *Copeland,* 66 Minn. 65, 61 Am. St. Rep. 415; *State* v. *Haines,* 58 Pac. 39.)

The local option law is unconstitutional. (*Anderson* v. *Comm.,* 76 Ky. (13 Bush.) 485; Constitution of Kentucky, Sec. 61; Texas Constitution, Art. XVI, Sec. 20; *State* v. *Wilcox,* 19 Am. Rep. 364, 19 Am. Dec. 563; *Comm.* v. *Bennett,* 108 Me. 27, 11 Am. Rep. 304; *Sanford* v. *Morris County* (N. J.), 15 Am. Rep. 422; *Bancroft* v. *Dumas,* 21 Vt. 456; *Ex parte Wall,* 48 Cal. 279, 319; 19 Am. & Eng. Ency. of Law (2d Ed.), p. 497; *Thornton* v. *Territory,* 17 Pac. 896; *O'Neill* v. *Am. Fire Ins. Co.,* 166 Pa. St. 72, 45 Am. Rep. 650, 655, note; *Eutor* v. *Austin,* 47 —— 646; *Rice* v. *Voster* (Del.), 4 Harr. 479; *Meshmier* v. *State,* 11 Ind. 484; *Weir* v. *Comm.,* 31 ——, 649; *Maize* v. *State,* 4 Ind. 342; *State* v. *Wier,* 33 Iowa, 134; *State* v. *Deneke,* 9 Iowa, 203; *Soneto* v. *State,* 2 Iowa, 165, 63 Am. Dec. 487; *Bradshaw* v. *Langford,* 73 Md. 428, 11 L. R. A. 582; Opinion of Justices, 160 Mass. 586; *Elliott* v. *Detroit,* 121 Mich. 611; *Owen* v. *Baer* (Mo.), 55 S. W. 644; *State* v. *Hayes,* 61 N. H. 264; *Parto* v. *Himrod* (N. Y.), 59 Am. Dec. 506; *Corning* v. *Green* (N. Y.), 23 Barb. 33; *Thorn* v. *Kramer* (N. Y.), 15 Barb. 112; *Weavoer*

v. *Terry,* 8 Ohio St. 564; *Cin. Ry. Co.* v. *Clinton Co.,* 16 Ohio St. 77; *State* v. *Swicher,* 17 Tex. 441; *Winters* v. *Hughes,* 3 Wash. 443, 24 Pac. 759; *People* v. *Draper,* 13 N. Y. 558; *City of Hutchinson* v. *Leinback* (Kan.), 74 Pac. 598; *Goebrick* v. *State,* 5 Iowa, 491; *Parker* v. *Comm.,* 6 Pa. St. 507; *State* v. *Copeland,* 3 R. I. 33; *State* v. *Liedtke,* 9 N. B. 498; *Meishmeir* v. *State,* 11 Ind. 484; *State* v. *Steele,* 17 Mo. 529; *Mayor* v. *Finney,* 54 Ga. 324; *People* v. *Parks,* 58 Cal. 644; *Groach* v. *State,* 42 Ind. 547; *State* v. *King,* 37 Iowa, 462; *Hammond* v. *Haynes,* 20 Am. Rep. 83; *State* v. *Fortner,* 24 Iowa, 1, 29 L. R. A. 206; *People* v. *Collins,* 3 Mich. 343; *Feek* v. *Bloomdale Twp.,* 82 Mich. 393; *Lock's Appeal,* 72 Pa. 491, 13 Am. Rep. 716; *Boyd* v. *Bryant* (Ark.), 37 Am. Rep. 6; *State* v. *Pond,* 93 Mo. 606; Vol. 13 Am. & Eng. Ency. of Law, 92; *People* v. *City of Butte,* 4 Mont. 174; *People* v. *McFadden,* 81 Cal. 489; Cooley's Const. Lim. (6th Ed.) 137, 145; *In re Weston* (Mont.), 72 Pac. 512; *Ex parte Seibold,* 100 U. S. 371; Church on *Habeas Corpus,* page 391; Vol. 17 Am. & Eng. Ency. of Law (2d Ed.), page 358; *Brown* v. *State,* 9 Neb. 189; *Woods* v. *State,* 36 Ark. 36; *State* v. *Chandlier,* 15 Vt. 425; *Fowler* v. *State,* 39 Ark. 209; *Chew* v. *State,* 43 Ark. 361; *State* v. *Gray,* 22 Atl. 675; *Wright* v. *People,* 101 Ill. 126; *State* v. *Bissell,* 67 Iowa, 616; *Salina* v. *Sietz,* 16 Kan. 143; *King* v. *State,* 66 Miss. 502; *Carl* v. *State,* 39 Ala. 93; *Comm.* v. *Kimball* (Mass.), 24 Pick. 336; *State* v. *Hall,* 39 Me. 107; *Comm.* v. *Sloan* (Mass.), 4 Cush. 32; *State* v. *Brown,* 31 Mo. 552; *Sweeney* v. *Webb* (Texas), 76 S. W. 766; *Strong* v. *Comm.* (Ky.), 49 S. W. 451; *People* v. *Murphy,* 93 Mich. 41; *Eastman* v. *Comm.* (Ky.), 49 S. W. 795; *State* v. *Donner,* 21 Wis. 274; *Chipman* v. *People,* 24 Colo. 520; Tiedman on Lim. of Police Power, Secs. 102-103; *Comm.* v. *Fowler,* 96 Ky. 166, L. R. A. 839; 8 Ency. 864, page 872; *In re Wiltshire,* 103 Fed. 620; *Mulzer* v. *Kansas,* 123 U. S. 623; *Sarrls* v. *Comm.,* 88 Ky. 332; *State* v. *Northern Pac. Express Co.* (Mont.), 71 Pac. 404; *State* v. *Rocky Mt. Bell Tel. Co.* (Mont.), 71 Pac. 311; Cooley, Const. Lim. (6th Ed.), 716, 717; 19 Am. & Eng. Ency. of Law (2d Ed.), page 489.)

*Mr. W. P. Baker,* and *Mr. R. A. O'Hara,* for Respondent.

Cited: *Boston Beer Co.* v. *Mass.,* 97 U. S. 25; Black, Intoxicating Liquors, Secs. 45, 206, 34, 104; *Weil* v. *Calhoun,* 25 Fed. Rep. 865; *Commonwealth* v. *Dean,* 110 Mass. 357; *Commonwealth* v. *Bennett,* 108 Mass. 27; *Gloversville* v. *Howell,* 70 N. Y. 287; *Locke's Appeal,* 72 Pa. St. 491; *Fell* v. *State,* 42 Md. 71; *Ex parte Lynn,* 19 Tex. App. 293; *State* v. *Pond,* 93 Mo. 606, 6 S. W. 469; *Feek* v. *Bloomingdale,* 82 Mich. 393; *Territory* v. *O'Connor,* 5 Dak. 397; Cooley, Const. Lim. (6th Ed.), 146; *State ex rel. Witter* v. *Forkner,* 28 L. R. A. 206; *Dalby* v. *Wolf,* 14 Iowa, 228; *Nixon* v. *State,* 76 Ind. 524; *Comm.* v. *Porter,* Phila. 217; *State* v. *Wray,* 72 N. Car. 253; *State* v. *Mitchell,* 28 Mo. 562; *State* v. *Robertson,* 24 Mo. App. 232; *United States* v. *Calhoun,* 39 Fed. 604; *Schwuchow* v. *Chicago,* 68 Ill. 444; *Butler* v. *State,* 25 Fla. 347; *Wilcox* v. *Deer Lodge County,* 2 Mont. 577; *State* v. *Cooke,* 24 Minn. 247.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On the 1st day of December, 1903, an election was held in Ravalli county, Montana, pusuant to the provisions of Chapter X, Title VII, Part III, Secs. 3180-3188, of the Political Code, at which election a majority of all the votes cast were for "Sale of Intoxicating Liquors: No," and thereafter the returns of the election were duly canvassed, and the result published, as required by law. The provisions of said chapter thereupon became operative in that county on the 7th day of January, 1904.

Within the confines of Ravalli county is the town of Hamilton, incorporated under the general incorporation Act of Montana. Pursuant to that Act the town council had enacted an ordinance regulating and licensing the saloon or retail liquor business, and had regularly issued to this complainant a license to conduct such saloon business in that town. On January 7,

1904, after the local option law is claimed to have become operative in Ravalli county, the complainant was arrested and tried for and convicted of selling intoxicating liquors in violation of that law, and sentenced to pay a fine of $100, and in default, of payment was confined in the county jail. He thereupon applied to this court for a writ of *habeas corpus,* which was issued. Upon the petition and the return of the sheriff thereto the cause was submitted for decision to this court, it being conceded that no questions of fact were raised by the return of the sheriff.

Only two questions were argued and submitted for determination, and we have carefully confined our decision to them.

In order that no broader application may be made of the language herein used than is intended, the following is quoted from complainant's brief as showing the scope of this inquiry: "It will be conceded here that the proceedings of the trial and conviction were regular, and that, if the said so-called local option law is valid and constitutional, and has operative force in the territorial limits of the town of Hamilton, then this petition and writ should be dismissed. First. We take the position, as we have indicated, that the law is invalid, unconstitutional and void. Second. That the law, even if valid, has no operative force within the corporate limits of the town of Hamilton, and there can be no violation of it within that territory. That the law is unconstitutional upon the several grounds and for the reasons following: (a) That it is a delegation of legislative power. (b) That it delegates to the people the legislative function of determining the expediency of the law. (c) That it is local and special legislation. (d) That it is not complete in all its terms and provisions. (e) That it undertakes to absolutely prohibit the sale of spirituous, vinous, malt and intoxicating liquors, making no exceptions for medical or sacramental purposes, or for physicians, or for lawful interstate commerce."

1. Is the law unconstitutional?

The same objections which are urged against the constitutionality of this Act have been frequently lodged against so-

called local option laws, and, while in comparatively few, instances such laws have been held unconstitutional, the very great weight of authority and nearly all the later decisions have upheld them.

(a, b) The most frequent objection made is that such laws are an unwarranted delegation of legislative power to the people. Under our system of government the lawmaking authority is vested in the legislative assembly, and can be exercised by no one else. The legal effect of the popular vote, however, is not infrequently misconceived. If the law is complete in all its parts, it is an expression of the legislative will none the less that the contingency upon which it takes effect in any particular locality is made to depend upon a favorable vote of the people of that locality.

The Act under consideration was passed by the legislature, received the governor's approval, and became law of state-wide application on July 1, 1895. A vote of the people of Ravalli county adds nothing whatever to the efficacy of the law, but merely furnishes the occasion for the exercise of the power inherent in the law. The law remains intact, and is a valid enactment on the statute books, whether a vote be taken upon it in any county, or whether any vote so taken results favorably or unfavorably to calling into operation its provisions.

While the legislature may not delegate to the people the authority to make the law, or to say what kind of a restrictive measure shall be adopted, or propose a law and submit it to a vote of the people to say whether or not it shall in fact be enacted into law, it may pass an Act which takes effect only upon the happening of a contingency—a favorable vote of the people.

With equal propriety could it be said that the general incorporation Act under which the town of Hamilton assumes to license and regulate the saloon business within its corporate limits is unconstitutional for the same reason, for that Act is purely a local option law, which is to be put into operation in the same manner as the law in question. In fact, this same

objection was urged against the Act of the territorial legislature incorporating the city of Butte; but this court disposed of the question adversely to the contention of the relator, and, after citing numerous authorities in support of its position, among other things said: "These cases have been cited to show, first, that it is within the competency of legislative authority to enact laws the taking effect of which may be conditional or contingent, depending upon some uncertain future event; and, second, that it is competent for a legislature to delegate to one man, or to a certain designated body or class of men, or to the whole people, the question as to when the contingency or event has or shall take place. And such determination is not in any sense the making of the law. It is declaring when a law already made shall go into effect." (*People ex rel. Boardman* v. *City of Butte,* 4 Mont. 174, 1 Pac. 414, 47 Am. Rep. 346; Cooley's Constitutional Limitations, 145; Black on Intoxicating Liquors, 45, and numerous cases cited.)

(c) Is the law local or special in the sense that it is prohibited by Section 26, Article V, of the Constitution?

Considering this same question, the Supreme Court of Dakota, in *Territory* v. *O'Connor*, 5 Dak. 397, 41 N. W. 746, 3 L. R. A. 355, said: "That it is in conflict with the statute of the United States prohibiting special legislation (by the territorial legislature), or that it is a delegation of legislative power, might have been urged with some plausibility in the earlier days of American jurisprudence. It is now too late to argue the question as an original proposition. Matters affecting the police, such as the sale of intoxicating drinks, running at large of cattle, and kindred questions, are so differently regarded in different localities that it has been by no means uncommon to submit them to the people of the locality to be affected by their exercise; and laws so submitting such questions have been almost uniformly sustained, though not always upon the same ground. Many of the authorities in a case like the one before us hold that the law was perfect in all its parts, and complete, so far as any further action of the legislature was concerned, when it

was approved by the executive; and that its adoption or rejection by the voters, or rather the favorable or unfavorable vote as to execution of the law, was a contingency merely provided for by the legislature as to the time when it should become operative."

The mere fact that the adoption of this law in Ravalli county, and its rejection or nonacceptance in Missoula county, for instance, will make that unlawful in the former which is lawful in the latter, does not render the Act void. The error in the argument made in support of this contention lies in the assumption that the vote makes the law, and that what is a law in Ravalli county is not a law in Missoula county. The law is the same for all, and equally available to all. (*Territory* v. *O'Connor, supra; State* v. *Pond,* 93 Mo. 606, 6 S. W. 469.)

Considering this objection to a like statutory enactment the Supreme Court of New Jersey in *Paul* v. *Gloucester County,* 50 N. J. Law, 585, 15 Atl. 272, 1 L. R. A. 86, said: "The inhibition in the constitution is not intended to secure uniformity in the exercise of delegated police powers, but to forbid the passing of a law vesting in one town or county a power of local government not granted to another. If one town or county was excepted from the operation of this law, it would be special and local. Under it one county or town has neither greater nor less power than every other, nor does such power differ in any respect. The authority granted is in every aspect of it the same. It may be exercised in a different way or the same way. * * * The law, in my judgment, is unquestionably a general law. The quality of uniformity in result cannot coexist with the right of self-government in various sections of the state."

In discussing a township organization Act which was purely a local option law, the Supreme Court of Missouri, in Opinion on Township Organization Law, 55 Mo. 295, said: "It is a general law, made for the whole state, and by the terms of the Act itself took effect from and after its passage. Every county in the state may avail itself of the privileges offered by this

law by a majority vote of its people. It is left to the option of the counties whether they will organize under the law or not. If a majority vote for it, such vote does not create the law, but places the county so voting within its provisions, and the organization then takes effect, and also the law as it existed before the vote was taken. The law does not delegate, nor was it the intention of the lawmakers to delegate, legislative authority to the counties. Unless the counties avail themselves of the right to organize, they will remain as they were, unaffected by any of the provisions of this statute."

(d) Is the law complete?

The law provides, first, for a petition to the board of county commissioners praying for an election; second, for the notice to be given of the impending election; third, for the particular form of ballots, for their supply, and the method of marking them; fourth, for an election, and the canvassing of the returns according to the general election laws; fifth, for a notice of the result of the election, and a definite date when the law shall become operative; and, finally, for a penalty for a violation of its provisions. The only question submitted to the people is: Shall intoxicating liquors be sold in this county, or in other words: Shall the people of this county become subject to the operations of the local option law? And that question, we have already seen, may properly be submitted to a popular vote. The law is a complete legislative enactment. It was passed with all due formality by the legislature and was approved by the governor. As was said of a like statute by the Supreme Court of Missouri in *State* v. *Pond, supra:* "The law is complete and effective when it has passed through the forms prescribed for its enactment, though it may not operate, or its influence may not be felt, until a subject has arisen upon which it can act. In the case we are considering the Act took effect with the other laws contained in the statutes. It was passed according to the prescribed forms designated in the constitution. Its enactment did not depend upon any popular vote, but parties to be affected by it were at liberty to accept the privileges granted and incur

the burdens and obligations it imposed, as their interests or will should dictate. If they elected not to avail themselves of its privileges, it did not in the least impair its force. It still stood a valid enactment on the statute book. If they organized under it, they were entitled to the benefit of its provisions; but in either event the law remained the same." (See, also, *State* v. *Wilcox,* 45 Mo. 458.)

(e) Because no exception is made for liquors for medicinal or sacramental purposes, or for sales in original packages imported from other states, this law, it is claimed, is unconstitutional and void. However, the complainant was not arrested for selling liquors for medicinal or sacramental purposes, or for selling in original packages which had been imported from another state, and, while these subjects have received consideration at the hands of the courts, and a review of such adjudicated cases might be interesting, this court will not decide a moot case. The complainant cannot urge these objections, and it will be time enough to consider them when they become directly involved. (*State* v. *Pond, supra.*)

2. Is the local option law operative within the incorporated town of Hamilton?

The local option law is a portion of Part III of the Political Code, while the general incorporation Act for cities and towns is embraced in Part IV of the same Code. The portion relating to the legislative powers of cities and towns is found in Section 4800. Whether Section 4800, as amended by Act of the Fifth legislative assembly, approved March 8, 1897 (Sess. Laws 1897, p. 203), or the Act of the Third legislative assembly, approved March 7, 1893 (Sess. Laws 1893, p. 113, retained by Section 5186, Political Code), be in force, is immaterial for the purposes of this case.

Counsel for complainant contend that under the provisions of Section 4800 the town of Hamilton has been granted power to license and regulate saloons within its corporate limits, and that, if the local option law be given force in that town, there is a direct conflict in the laws, and therefore the canon of inter-

pretation provided in the Political Code, Section 5162, must be applied, viz.: "If the provisions of any title conflict with or contravene the provisions of another title, the provisions of each title must prevail as to all matters and questions arising out of the subject-matter of such title."

The general license law of this state is found in Part III of the Political Code along with the local option law, and if the contention of complainant is correct, then no license can be exacted from residents of the town of Hamilton under the general license law; in other words, the license exacted by the town of Hamilton would be exclusive. But no one would seriously contend that in granting power to incorporated towns to license and regulate the liquor traffic the state had surrendered its power to license and regulate it also. (*Corbett* v. *Territory*, 1 Wash. T. 431.) The power conferred on incorporated towns by the general incorporation Act is but a mere grant of limited power to the municipality, which it holds subject to the general laws of the state. "But municipal corporations are subordinate parts of the state and invested with limited powers. The legislature, in granting such powers, does not divest itself of any power over the inhabitants of the district which it possessed before the charter was granted." (*Wilcox* v. *Deer Lodge County*, 2 Mont. 574.)

The general incorporation Act only authorizes the city council to license and regulate the sale of intoxicating liquors where it can be done without violating existing state laws. (*Cooper* v. *Shelton*, 97 Ky. 282, 30 S. W. 623; *Tatum* v. *State*, 79 Ga. 176, 3 S. E. 907.) In other words, by Section 4800 the state merely says to the municipality: "You may license such business so long as that business may be lawfully carried on under the general laws of the state, and no longer." This intent on the part of the legislature is made manifest by Subdivision 3 of Section 4800, which reads as follows: "The city or town council has power: * * * (3) To license all industries, pursuits, professions and occupations for which *under the state law,* a license is required, but the amount to be paid for such license must not exceed the sum required by the state law."

With the local option law in operation in Ravalli county, there is no one there who can lawfully sell intoxicating liquors, and therefore there is no one whom the city of Hamilton can lawfully license to conduct such business. The limited grant of power to the town of Hamilton is merely held in abeyance so long as the local option law is in effect. (*Robertson* v. *State,* 5 Tex. App. 155; *Butler* v. *State,* 25 Fla. 347, 6 South. 67.)

The license granted to complainant is a mere permit, and he took it charged with the full knowledge that at any time the state, in the exercise of its police power, might revoke it (*Mc-Kinney* v. *Town of Salem,* 77 Ind. 213), and that the adoption of the local option law in Ravalli county would have such effect (*State* v. *Cooke,* 24 Minn. 247, 31 Am. Rep. 344). For the powers of the city council are subordinate to the general laws of the state (*State* v. *Langston,* 88 N. C. 692). Neither is the grant of the power by the legislature made to, or directly for the benefit of, the individual, but it is made to the municipality as such, to enable it to properly conduct its corporate affairs.

The cases cited by complainant from California are not in point. There the counties are more nearly municipal corporations, and the boards of county commissioners are legislative bodies to a limited extent, at least. In *Ex parte Campbell,* 74 Cal. 20, 15 Pac. 318, 5 Am. St. Rep. 418, it is said: "Section 25 of the county government Act [St. 1883, p. 303, c. 75] confers upon the boards of supervisors in their respective counties power to make and enforce 'all such local, police, sanitary and other regulations as are not in conflict with general laws.' There is nothing in the case before us to show whether the board of supervisors of Los Angeles county have ever made any regulations with respect to the sale of wines or liquors in saloons and barrooms, but manifestly such regulations, if made, could not operate to divest the authorities of the city of the right to legislate upon the same subject, and enforce such regulations within the city limits. The regulations of the board of supervisors would not be a general law within the meaning of the provisions of Section 11, Article XI, of the Constitution."

In this state the counties are at most only *quasi* municipal corporations, with no legislative authority vested in the several boards of county commissioners in the sense that they may adopt ordinances and prescribe penalties for a violation thereof, or define nuisances and provide for their abatement.

Complainant apparently assumes that by virtue of the vote favorable to the enforcement of the local option law in Ravalli county the law therefore became, in effect, an enactment or ordinance of that county; but, as we have said before, the law was in existence as a state-wide measure before the vote was taken, and the only possible effect of the vote was to put that law into effect in that particular locality.

We agree with counsel for complainant when they say that ordinances passed by the town of Hamilton under the power granted to that town by the general incorporation Act cannot be controlled, suspended, altered or amended by the county, either by its board of county commissioners or by a vote of its inhabitants. But it is not the county government of Ravalli county which is seeking to prohibit the sale of intoxicating liquors, but the state itself. The county is not depriving the town of Hamilton of the revenue which it formerly had from saloon licenses, but the state is doing so by operation of a general law. The law is not an ordinance of the county, and the vote of the people had nothing to do with its enactment. If the law had not already been on the statute books, the people of Ravalli county would have been helpless in the matter, so far as controlling the liquor traffic by any vote which they may have cast. In *State* v. *Pond, supra,* it is said: "By its provisions the law, and not the vote, extended its influence over the locality voting against the sale of intoxicants. It was the law that authorized the vote to be taken, and, when taken, the law, and not the vote, declared the result that should follow the vote. The vote was the means provided to ascertain the will of the people, not as to the passage of the law, but whether intoxicating liquors should be sold in their midst. If the majority voted against the sale, the law, and not the vote, declared it should not be sold. The vote sprang

from the law, and not the law from the vote. By their vote the electors declared no consequences, prescribed no penalties, and exercised no legislative function. The law declared the consequences, and, whatever they may be, they are exclusively the result of the legislative will."

In *Ex parte Lynn,* 19 Tex. App. 293, this same question was before the court. Under the Texas local option law the people of Milam county had voted against the sale of intoxicating liquors. The petitioner, Lynn, was arrested for a violation of the law, and defended upon the ground that he resided in the city of Rockdale, an incorporated city within Milam county, which had issued to him a license to sell liquors, and that the charter of that city authorized it to issue such license. The Court of Appeals, however, held the law operative throughout the county, and, among other things, said: "But, even viewing it as a general law, it was unquestionably the intent of the legislature that it should have the effect, whenever adopted in a particular locality, to prohibit the sale of intoxicating liquors in that locality by any person, without regard to whether such person, had been licensed by the state, county, city or town to sell. Any other construction of the law would seriously impair its efficacy, and in a great measure defeat the purposes for which it was enacted. * * * we hold, therefore, that the local option law, having been legally adopted in Milam county, it became operative throughout the county, and upon all persons within said county alike, and had the effect to repeal and abrogate all licenses for the sale of intoxicating liquors granted by said county, or by any city or town within said county."

Counsel contend that the decisions of the courts of Texas and Kentucky should not be considered by this court, for the reason that the local option laws of those states were enacted pursuant to constitutional provisions; but we are unable to perceive the difference in effect between a law passed by a legislature because it is compelled to do so, and one passed by a legislature because it has full power and authority to do so. Each is alike a legislative mandate when duly passed, and each is of equal dignity and importance.

From the foregoing considerations we are of the opinion that the adoption of the local option law in Ravalli county prohibits the sale of intoxicating liquors in the town of Hamilton. (*Smith* v. *Patton,* 103 Ky. 444, 45 S. W. 459; 19 Ency. Law (2d Ed.), 510.)

The right to manufacture and traffic in intoxicating liquors is one which is exercised subject to the regulation and control of the police power of the state; a power of which the legislature cannot divest itself (*Burnsides* v. *Lincoln County Court,* 86 Ky. 423, 6 S. W. 274; *Boston Beer Co.* v. *Massachusetts,* 97 U. S. 25, 24 L. Ed. 989); and such body is the exclusive judge of the manner in which such police power shall be exercised, and its action should be liberally construed (*Garrett* v. *Mayor,* 47 La. Ann. 618, 17 South. 238).

In the early history of this class of legislation a few courts held local option laws unconstitutional. (*Rice* v. *Foster* (Del.), 4 Har. 479; *Thornton* v. *Territory,* 3 Wash. Ter. 482, 17 Pac. 896; *Ex parte Wall,* 48 Cal. 279, 17 Am. Rep. 425; *Parker* v. *Com.,* 6 Pa. St. 507, 47 Am. Dec. 480; *Maize* v. *State,* 4 Ind. 342; *State* v. *Wier,* 33 Iowa, 134, 11 Am. Rep. 115.) A Michigan local option law was held unconstitutional, but because of a defective title to the Act (*In re Hauck,* 70 Mich. 396, 38 N. W. 269); but afterwards, in *Feck* v. *Township Board,* 82 Mich. 393, 47 N. W. 37, 10 L. R. A. 69, an Act similar to the one under consideration, in so far as the objections here urged are concerned, was upheld. The case of *Ex parte Wall, supra,* was decided by a bare majority of the court, as was the case of *Thornton* v. *Territory, supra. Parker* v. *Com.* was overruled in *Locke's Appeal,* 72 Pa. St.. 491, 13 Am. Rep. 716, decided in 1873. *Maize* v. *State,* above, is overruled in fact, though not in express terms, by the later decision in *Groesch* v. *State,* 42 Ind. 547; while the effect of the decision in *State* v. *Forkner,* 94 Iowa, 1, 62 N. W. 683, must be held to have destroyed the effect of the decision in *State* v. *Wier,* above, as an authority.

So far as our investigation goes, the only states which now hold such laws invalid are Delaware, California and Washing-

ton, while they are upheld by the following authorities: *Boyd v. Bryant,* 35 Ark. 69, 37 Am. Rep. 6; *State v. Wilcox,* 42 Conn. 364, 19 Am. Rep. 536; *Frederickton v. Queen* (Can.), 3 Duv. 505; *Territory v. O'Connor,* 5 Dak. 397, 41 N. W. 746, 3 L. R. A. 355; *Weil v. Calhoun* (C. C.), 25 Fed. 865; *Caldwell v. Barrett,* 73 Ga. 604; *State v. Forkner,* 91 Iowa, 1, 62 N. W. 683; *Com. v. Dean,* 110 Mass. 357; *Fell v. State,* 42 Md. 71, 20 Am. Rep. 83; *Feek v. Twp. Board,* 82 Mich. 393, 47 N. W. 37, 10 L. R. A. 69; *State v. Cooke,* 24 Minn. 247, 31 Am. Rep. 344; *Schulherr v. Bordeaux,* 64 Miss. 59, 8 South. 201; *State v. Pond,* 93 Mo. 606, 6 S. W. 469; *Paul v. Gloucester County,* 50 N. J. Law, 585, 15 Atl. 272, 1 L. R. A. 86; *Village of Gloversville v. Howell,* 70 N. Y. 287; *Gordon v. State,* 46 Ohio St. 607, 23 N. E. 63, 6 L. R. A. 749; *Locke's Appeal,* 72 Pa. St. 491, 13 Am. Rep. 716; *Ex parte Lynn,* 19 Tex. App. 293; *Savage v. Commonwealth,* 84 Va. 619, 5 S. E. 565; *Bancroft v. Dumas,* 21 Vt. 456.

Commenting on these laws, Cooley says: "Such laws are known in common parlance as 'Local Option Laws.' They relate to subjects which, like the retaling of intoxicating drinks, or the running at large of cattle in the highways, may be differently regarded in different localities, and they are sustained on what seems to us the impregnable ground that the subject, though not embraced within the ordinary power of the municipalities to make by-laws and ordinances, is nevertheless within the class of police regulations, in respect to which it is proper that the local judgment should control." (Cooley's Const. Lim. 7th Ed. pp. 173-174.)

Finally, every reasonable intendment is to be resolved in favor of the constitutionality of the law, and before this court can pronounce a solemn enactment of the legislative assembly invalid, such invalidity must be made manifest beyond a reasonable doubt. (*State v. Camp Sing,* 18 Mont. 128, 44 Pac. 516, 32 L. R. A. 635, 56 Am. St. Rep. 551; *State v. Clancy,* 20 Mont. 498, 52 Pac. 267; *State v. McKinney,* 29 Mont. 375, 74 Pac. 1095.)

After this cause had been argued to this court at great length, it appeared from the testimony of the complainant, taken in open court, that at the time the writ of *habeas corpus* was served upon the sheriff of Ravalli county complainant was not in fact confined in the county jail, but was permitted to go about without apparent restraint. Upon this testimony of complainant this court would have been justified in dismissing his petition, but because of the importance of the questions and the public interest involved we have considered it upon its merits.

The complainant is remanded to the custody of the sheriff of Ravalli county to be imprisoned until he shall be discharged according to law, and the proceedings are dismissed.

*Dismissed.*

MR. JUSTICE MILBURN (concurring): While I believe that MR. JUSTICE HOLLOWAY is correct in what he says in the foregoing well-considered opinion as to the constitutionality of the statute, yet it is not because of this belief that I decide, as I do, that the writ should be quashed and the proceedings dismissed. I so decide upon the single ground that the complainant was not in the custody of the sheriff, or at all restrained of his liberty, when he prayed for the writ.

The complainant, in his petition addressed to the justices of this court, declared under oath that he was "unlawfully imprisoned, detained and confined of his liberty by Joshua Pond, sheriff of Ravalli county,  *  *  *  in the county jail of said county." A writ of *habeas corpus* was issued by order of the chief justice, returnable before this court.

The sheriff, under oath, made his return that "at the time said writ was issued  *  *  *  and served upon me the said W. P. O'Brien was by me imprisoned and restrained of his liberty, and confined in the county jail of Ravalli county, and that such imprisonment and restraint would have continued until this time, had not this honorable court directed that said W. P. O'Brien, relator herein, be released upon executing a satisfactory bond in the sum of $500.  *  *  *"

The complainant, being examined upon his oath in this court at the time of the hearing, declared that at the time the petition was made and at the time the sheriff was served with the writ he was not in the custody of the sheriff at all, but had been allowed to go at his own will pending his application for said writ.

Looking to Article VIII, Section 3, of the Constitution of this state, we find that a petition for a writ of *habeas corpus* addressed to a justice of this court must show that the complainant is "held in actual custody." In Section 170 of the Code of Civil Procedure is said the same thing.

The writ of *habeas corpus* is to enable a person unlawfully held in *actual* custody to regain his liberty. It is not designed for the purpose of assisting persons to get expeditiously, or at all, a mere decision of the court upon unsettled and disputed points of law. In the case of a *bona fide* petition of a person actually in custody this court may and will grant a writ returnable and order a hearing to be had as provided by law. But it will not permit the sacred writ, which was intended to protect the citizen from unlawful imprisonment, to be made, by convenient arrangement, a mere means of securing such a decision as is referred to above.

